## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2018, 8:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael B. Troemel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of J.H. (Minor Child), and

D.H. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

December 20, 2018

Court of Appeals Case No. 18A-JT-1663

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause No. 79D03-1712-JT-133

**Crone, Judge.**

# Case Summary

D.H. ("Mother") appeals the trial court's order involuntarily terminating her parental rights to her minor child, J.H. She argues that the evidence is insufficient to support the trial court's termination of her parental rights. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

In February 2016, J.H. was removed from the care of Mother and J.H., Sr. ("Father"),[1] on an emergency basis due to allegations of abuse and/or neglect. The Tippecanoe County Department of Child Services ("DCS") filed a child in need of services ("CHINS") petition regarding J.H. and, following a hearing, J.H. was adjudicated a CHINS. A dispositional decree was entered in May 2016, and while the initial permanency plan was reunification, that plan subsequently changed to termination and adoption in November 2017. Following a termination hearing, the trial court made the following relevant findings of fact:[2]

> 1. Mother (DOB 06/01/1985) is the Mother and Father (DOB 07/09/1982) is the Father of J.H. (DOB 01/08/2016).
>
> ….

---

[1] The trial court also terminated Father's parental rights as part of its order here, but Father does not participate in this appeal.

[2] The trial court's order references the parents and the minor child by their full names at times, and refers often to J.H. simply as "the child." We use "Mother," "Father," and "J.H." where appropriate.

5. The reasons for the third CHINS case[3] included ongoing concerns related to drug use after J.H. tested positive for methamphetamine on February 15, 2016. Both Mother and Father denied drug use but were unable to provide an explanation for the child's exposure to methamphetamine.…

6. J.H. was placed in protective custody pursuant to a CHINS Detention Hearing Order issued on February 29, 2016. At that time, Mother was seventeen (17) weeks pregnant. A CASA was appointed to represent the best interests of J.H. J.H. was found to be a Child in Need of Services ("CHINS") and a dispositional order was issued on May 20, 2016. J.H. has remained out of the parents' care continuously since that date except for an unsuccessful trial home visit. In fact, J.H. has been out of the care of parents for over fifteen (15) of the most recent twenty-two (22) months.

….

8. During the third CHINS case, Mother was offered the following services: abuse assessment and treatment, parenting assessment, case management, random drug screens, and parenting time. Mother was offered additional services including parent education, individual therapy, medication management, domestic violence assessment.… These services have been exhaustive and have been designed to address the difficulties that resulted in J.H.'s removal and continued placement outside the home.

….

10. At the onset of the third CHINS case, the parents were

---

[3] Because Father had been involved in two prior CHINS proceedings regarding his three older children, for clarity, the trial court's termination order refers to the underlying CHINS proceeding here as "the third CHINS case." Appealed Order at 2.

married and residing together. Neither parent was employed, neither had housing, and both were dependent upon others to meet their own needs let alone the needs of J.H.

11. Initially, both parents maintained contact with DCS and commenced assessments as required. The parents participated in services as recommended and regularly attended parenting time as scheduled. Father still struggled with substance use. After the parents obtained an appropriate residence, by order issued January 9, 2017, J.H. was placed with Mother on a trial home visit conditioned upon Father vacating the family home and adhering to a safety plan. Father was subsequently authorized to return to the home and participate in the trial home visit.

12. During the trial home visit, concerns arose regarding substance use. Father tested positive for synthetic cannabinoids due to using "spice" twice daily. Father failed two (2) drug screens for alcohol, in February 2017 and March 2017. Mother tested positive for marijuana in June 2017. Mother admitted Father was using "spice" even when Father's drug screens returned negative. Mother's medication counts were not consistent with Mother's prescriptions. Mother appeared to be under the influence when the children were in Mother's care demonstrated by slurred speech and inability to focus. There were also reports of domestic violence in the home.

13. The trial home visit was terminated on July 5, 2017 after Father was arrested in the family home. A large amount of spice and a one-hitter pipe was observed on a table in plain view. Despite Mother and J.H. being in the home at the time of Father's arrest, Mother denied observing said items. Mother admitted taking more than the prescribed amount of her medication. DCS also took custody of the younger sibling (Ja.H.) born during the third CHINS case who is not a subject of this termination proceeding. Mother has other prior born children

(ages 9 and 11) who reside in the care of their father and who are not subjects of this termination proceeding.

14. After the trial home visit was terminated, participation of the parents in services declined. Mother filed for divorce in July 2017. The family was evicted on August 10, 2017. Father was incarcerated from September 1, 2017 to November 6, 2017. Mother admitted herself for inpatient mental health treatment on November 16, 2017 due to depression and homicidal ideations. Upon release from the hospital on November 24, 2017, Mother disappeared until approximately January 5, 2018 during which time Mother failed to maintain contact with DCS, failed to participate in services, and failed to attend any visits after November 10, 2017. Father was arrested again on February 17, 2018 and has since remained incarcerated.

15. A permanency hearing was held on November 16, 2016 at which time the permanent plan remained reunification. A second permanency hearing was held on February 3, 2017 at which time the permanent plan remained reunification. A third permanency hearing was held on May 15, 2017 at which time the permanent plan remained reunification. A final permanency hearing was held on November 29, 2017 at which time the permanent plan was determined to be the initiation of proceedings for termination of parental rights and adoption.

16. DCS filed its petitions in the above-referenced cause on December 11, 2017. The evidentiary hearing on the Verified Petitions to Terminate Parental Rights was held on March 7, 2018.

17. Mother has a history of unstable housing with four (4) or five (5) prior evictions. During most of the third CHINS case, Mother periodically resided with Maternal Grandmother, in her vehicle, and with various friends. Mother admitted Maternal

Grandmother, Maternal Step Grandfather, and Maternal Aunt were all drug users who would steal Mother's medication.

18. Mother was prescribed a variety of medications at different times. At times, Mother was adamant she was taking medications as prescribed although she also reported a lapse in obtaining such medication due to an insurance issue. Mother allowed medication counts but there were frequently either more or less pills than expected according to the prescription. At times, Mother admitted forgetting to take medications as well as intentionally taking more of certain medications. Mother was observed to be under the influence at times demonstrated by swaying, inability to stand, slurred speech, slow reactions, and memory loss. Mother has at least two (2) other prior mental health admissions for suicidal ideations. Mother reports attending private therapy since June 2015.

19. At the time of the termination hearing, Mother had been residing with a boyfriend since January 2018 who provides Mother with transportation. The boyfriend conducts maintenance at his apartment complex in exchange for rent. Mother obtained employment at various locations but failed to maintain a long-term position. Mother failed to consistently provide verification of employment or work schedules. At the time of the termination hearing, Mother reported employment at a grocery store starting January 28, 2018 but again failed to provide verification.

20. Mother completed a substance abuse assessment. Mother consistently denied drug use despite testing positive for "spice" and marijuana. During the third CHINS case, Mother tested positive for the presence of drugs on 9/26/2016 (synthetic cannabinoids), 11/14/2016 (tramadol), 11/15/2016 (tramadol), 12/19/2016 (tramadol), 12/28/2016 (tramadol), 01/10/2017 (tramadol), 04/21/2017 (oxycodone), 04/26/2017 (oxycodone), 06/05/2017 (marijuana), 06/30/2017 (alprazolam), 08/17/2017

(tramadol), 08/18/2017 (tramadol), 08/21/2017 (tramadol), 08/24/2017 (synthetic cannabinoids), 08/28/2017 (synthetic cannabinoids), 09/06/2017 (synthetic cannabinoids), 09/26/2017 (alprazolam/tramadol), October 10, 2017 (alprazolam/tramadol), October 19, 2017 (tramadol), 11/01/2017 (tramadol), 11/02/2017 (alprazolam), 11/08/2017 (tramadol), 11/11/2017 (hydrocodone/tramadol), 11/27/2017 (tramadol) and 02/19/2018 (tramadol). Mother failed to take all drug screens as requested.

21. Mother has not successfully completed any service. Mother participated in case management including parenting education. Since July 2017, Mother failed to attend sessions regularly and little progress was made. Mother was unsuccessfully discharged from case management services.

22. Mother completed a parenting assessment and participated in parenting education. Mother was not receptive to parenting education or redirection during parenting time. Mother demonstrated angry and aggressive behaviors with Father and, at times, with the children who would then scream themselves. For example, Mother stated at a visit that she would stab Grandmother in the heart for cutting the children's hair. Mother was observed co-sleeping with the younger child despite safety warnings. On some occasions, Mother's visits were ended early when Mother failed to provide necessary supplies. Mother was discharged from fully-supervised parenting time in approximately October 2017 due to lack of consistent attendance.

23. After resurfacing in January 2018, Mother resumed participation in home-based case management, private therapy/medication management, and random drug screens. However, Mother has maintained very limited contact with DCS. Mother's parenting time is fully supervised at a facility twice per week for three (3) hours each visit. Mother's recent re-engagement and short-term improvement does not outweigh an

otherwise long-term demonstrated pattern of instability and neglect.

Appealed Order at 2-5.

[3]     Based upon these findings of fact, the trial court concluded that: (1) there is a reasonable probability that the conditions that resulted in J.H.'s removal and continued placement outside the home will not be remedied by Mother; (2) there is a reasonable probability that the continuation of the relationship between Mother and J.H. poses a threat to his well-being; (3) termination of the parent-child relationship between Mother and J.H. is in his best interests; and (4) DCS has a satisfactory plan for the care and treatment of J.H., which is adoption. Accordingly, the trial court determined that DCS had proven the allegations of the petition to terminate parental rights by clear and convincing evidence and therefore terminated Mother's parental rights. This appeal ensued.

## Discussion and Decision

[4]     "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all

other reasonable efforts have failed." *Id*. A petition for the involuntary termination of parental rights must allege in pertinent part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove that termination is appropriate by a showing of clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). If the trial court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[5] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to

the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92-93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

[6] Mother challenges the trial court's conclusion that there is a reasonable probability that the conditions that led to J.H.'s removal and continued placement outside the home will not be remedied.[4] In determining whether there is a reasonable probability that the conditions that led to a child's removal and continued placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, "we must ascertain what conditions led to [his] placement and retention in foster care." *Id.* Second, "we 'determine whether there is a reasonable probability that those conditions will not be remedied.'" *Id.*

---

[4] Mother also challenges the sufficiency of the evidence supporting the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to J.H.'s well-being. However, Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, such that, to properly effectuate the termination of parental rights, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.* Accordingly, we will address the sufficiency of the evidence regarding only one of the three requirements.

(quoting *In re I.A.*, 934 N.E.2d 1132, 1134 (Ind. 2010) (citing *In re A.A.C.*, 682 N.E.2d 542, 544 (Ind. Ct. App. 1997))). In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231). "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *Lang v. Starke Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. The evidence presented by DCS "need not rule out all possibilities of change; rather, DCS need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

[7] The record indicates that J.H. was initially removed from the parents' care because he tested positive for methamphetamine, they lacked stable housing, and the parents depended on others for support. Although Mother did make some progress in services which led to J.H.'s return to her care for a trial home visit, J.H. was again removed in July 2017 due to Mother testing positive for marijuana, Mother abusing her prescription medication, Father's drug use in the home, and domestic violence between Mother and Father.

[8] Rather than challenging any of the trial court's specific findings of fact, Mother simply blames Father for J.H.'s initial removal from the home as well as the failed trial home visit and asserts that the evidence indicates that there is a reasonable probability that conditions will be remedied because she has now divorced Father. First, we reject Mother's attempt to minimize the ample evidence of her own harmful behavior which led to J.H.'s removals and continued placement outside of her care. Specifically, the evidence shows that Mother failed to successfully complete any service, has never demonstrated receptivity to parenting education, and has consistently denied her own drug use despite testing positive on multiple occasions. Moreover, at the time of the termination hearing, although Mother claimed recent progress and re-engagement in services, the trial court noted that Mother had maintained very limited contact with DCS and continued to fail to provide proof of stable employment. Based on the evidence presented, the trial court concluded that Mother's recent re-engagement and short-term improvement did not outweigh an otherwise long-term demonstrated pattern of instability and neglect. This was the trial court's prerogative, and we decline Mother's invitation to reweigh the evidence and second-guess that conclusion. *See E.M.*, 4 N.E.3d at 643 (noting that trial court is entrusted with this "delicate balance" and "has discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination."). Clear and convincing evidence supports the trial court's conclusion that there is a reasonable probability that the conditions that led to J.H.'s removal and continued placement outside Mother's care will not be remedied, and therefore the trial court's conclusion is not clearly erroneous.

Accordingly, we affirm the trial court's order terminating Mother's parental rights.

[9] Affirmed.

Vaidik, C.J., and Mathias, J., concur.